Gladowski et al. *v.* Felczak et al., Appellants.

Argued March 24, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Alexander J. Bielski,* with him *Walter J. Laska,* for appellants.

*Edward J. I. Gannon,* of *Hazlett, Gannon, Walter & McVicar,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, April 19, 1943:

This case involves the application of the doctrines of "unjust enrichment" and "restitution" — modern terms of legal nomenclature which have come largely to supplant the former designation of "quasi-contracts."

The earlier events in the controversy out of which the present action arises are recited in the opinion of the Court in *Polish Falcons of America v. American Citizens Club for Poles of Natrona,* 338 Pa. 218, 13 A. 2d 27. Polish Falcons, Nest No. 290 of Natrona, an unincorporated, subordinate lodge of Polish Falcons of America, was the owner of a valuable clubhouse in Natrona. The greater part of the building was occupied by the American Citizens Club, the Nest and the Club having largely a common membership. On August 13, 1936, the Nest conveyed the property to the Club through the agency of trustees appointed for that purpose. In August, 1937, Polish Falcons of America, together with one or more of the members of the Nest (which had meanwhile undergone a reorganization) brought a bill in equity to have the deed cancelled, the principal ground urged for the granting of this relief being that the constitution of the parent body provided that its consent was a prerequisite to the transfer or sale of the property of a subordinate lodge, and such consent had not been given to this conveyance. The court decreed that the deed was illegal and void, and made an order for

reconveyance of the property. Accordingly the Club deeded the building back to the Nest on June 3, 1940.

At the time of the conveyance to the Club in August, 1936, the building had been seriously damaged, indeed almost demolished, by the great flood of March 17, 1936, and the Nest was wholly without funds for its repair. Moreover, there was a judgment lien against it of $3,000 held by the First National Bank of Natrona, and the taxes were in arrears. After the Club obtained title it borrowed $6,000 from plaintiffs, Joseph and Sophia Gladowski, and on November 30, 1936, executed to them its bond in that amount secured by a mortgage on the property. It used this money partly to pay the bank the sum of $3,044.50 in satisfaction of its judgment, and partly, together with funds of its own, to pay the sum of $3,475 to a contractor whom it had engaged to make the repairs necessary to restore the building. During the four years it held color of title it paid to plaintiffs $2,000 in reduction of their mortgage.

Plaintiffs filed the present bill in equity to have the mortgage declared a lien upon the property. The court below entered such a decree to the extent of $4,000, being the balance due on the mortgage, together with interest thereon from March 1, 1940.

As the deed from the Nest to the Club was judicially determined to be illegal and void the mortgage executed by the Club is necessarily also invalid. While plaintiffs are not concluded by the decision in the proceedings between the Nest and the Club, since they were not parties to that litigation and it was begun after their mortgage was executed (*Stonecipher v. Keane*, 268 Pa. 540, 546, 112 A. 233, 235; *Puharic v. Novy*, 317 Pa. 199, 204, 176 A. 233, 235), the essential facts are not in dispute and there is nothing in the present record which would warrant any conclusion other than that there reached. But, although the mortgage itself is invalid because of the invalidity of the title of the Club which executed it, plaintiffs are not beyond the pale of equitable relief.

The crucial fact is that the mortgage money was used wholly for the benefit of the property which has now been restored to the ownership and possession of the Nest. As already stated, when the latter conveyed the property to the Club the building, due to the ravages of the flood, was totally unfit for occupancy, and it was saddled with a judgment lien which the Nest had no means to satisfy. If the Nest were to be allowed, without any equitable obligation on its part, to hold the property freed of that judgment and with its clubhouse restored by the repairs made upon it, and plaintiffs were to be denied the right to recover the money loaned by them in good faith and used, in the manner indicated, for the ultimate benefit of the Nest, every proper conception of morals and fair dealing would be violated. It is not as if the mortgage money had been devoted to the erection on the premises of some structure or improvements which the Nest, as owner, neither required nor desired.

In the Restatement of the Law of Restitution, §43 (3), it is said: "Where a person lends money to another who contracts to use the money for the discharge of a lien upon property which the other represents as belonging to him and where the money so lent is used for the discharge of such lien, the lender is entitled to have the lien reinstated for his benefit if, unknown to him, the property was not owned by the other . . ." And in §162 it is stated: "Where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder." That the law in most jurisdictions is in accord with these statements is shown by the long list of authorities in support of them cited in *Ingram v. Jones,* 47 Fed. (2d) 135, 140. That they have been accepted and followed by the appellate courts of

our own State is established by cases in which they have been applied: *The Haverford Loan & Building Association v. The Fire Association of Philadelphia,* 180 Pa. 522, 37 A. 179; *Smith v. Smith, Jr.,* 101 Pa. Superior Ct. 545; see also *General Casmir Pulaski Building & Loan Association v. Provident Trust Co.,* 338 Pa. 198, 12 A. 2d 336. Their application to the present situation would assure to plaintiffs the right of subrogation to the judgment lien of the bank, and equitable considerations require that plaintiffs should also be given the protection of a lien in order to be able to recoup the portion of the money advanced by them which was used for restoring the building, the total relief being limited, of course, to the sum of $4,000 and the interest remaining due on the mortgage. It is immaterial whether such relief be afforded in part through the application of the doctrine of subrogation or wholly by means of an equitable lien impressed upon the premises. In the Restatement of Restitution, §161, it is said: "Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises," and in §4 (d), one of the appropriate remedies in situations in which a person is entitled to restitution is stated to be "a decree by a court of equity that a lien upon the subject-matter . . . be established . . ." The object to be attained is the prevention of the unjust enrichment of defendants and the securing for plaintiffs of that to which they are justly and in good conscience entitled.

Plaintiffs' right to equitable relief is dependent upon their innocence in making the mortgage loan, but there is nothing in the record which militates against the presumption that they acted without knowledge of the invalidity of the Club's title. At the time of the mortgage transaction Joseph Gladowski was not a member of the Nest and there is no evidence that he was aware of the fact that the consent of the parent organization to the conveyance by the Nest had not been obtained; the

most that can be said is that he made the loan and accepted the mortgage through a mistake of fact. Moreover, he and his wife took title to the mortgage as tenants by the entireties and even if he had had knowledge of circumstances invalidating the title such knowledge could not be imputed to his wife; the title by entireties, being unified and indissoluble except by the consent of both parties, would not be affected thereby: *Thees v. Prudential Insurance Co.,* 325 Pa. 465, 190 A. 895.

In the original proceedings between the Nest and the Club the former claimed rent for the period of the Club's occupancy, and against this claim the Club set off the payments it had made in satisfaction of the lien of the bank and for the repairs to the building. The court in those proceedings held that the two claims balanced one another, and allowed no money judgment to either party. The Nest contends, therefore, that it has already paid for the items which were liquidated out of the mortgage money. But *plaintiffs* have not been reimbursed nor are they concerned with any accounting had between the Nest and the Club. Moreover, the Nest failed to call the court's attention to the fact that the Club had not actually made all the payments out of its own funds but most of them out of moneys obtained on a mortgage loan, and had merely substituted a new lien, in a larger amount, for the one previously existing on the property of the Nest.

The decree of the court that plaintiffs' mortgage constitutes a lien upon the premises is modified to read: "It is ordered, adjudged and decreed that an equitable lien be and hereby is impressed, as of November 30, 1936, upon the property of Polish Falcons, Nest No. 290 of Natrona, in Harrison Township, Allegheny County, Pennsylvania, referred to and described in the second paragraph of plaintiffs' bill, in favor of plaintiffs, Joseph Gladowski and Sophia Gladowski, in the amount of $4,000 and interest on that sum from March 1, 1940."

As thus modified, the decree is affirmed. Costs to be paid by defendants.