## Williard v. Millersburg Trust Company

*Ronald M. Katzman, Goldberg, Evans & Katzman,* for plaintiff.

*Francis J. O'Gorman, Metzger, Hafer, Keefer, Thomas & Wood,* for defendant.

BOWMAN, J., August 29, 1969.—By complaint in equity, plaintiff, the surviving tenant by the entireties, seeks to have set aside and cancelled a bond and mortgage for the reason that her signature to these documents is a forgery. By way of new matter and counterclaim, defendant seeks to make plaintiff responsible for that portion of the proceeds of the mortgage loan which was used to discharge pre-existing debts of plaintiff and her late husband which were liens against the mortgaged real estate at the time of the mortgage loan in question.

A long delay occurred between the time the case was at issue on the pleadings and a request made for hearing. The hearing has now been held. From the admitted facts and the hearing record it develops that

there is but one legal issue to be resolved. Is the doctrine of unjust enrichment applicable under the facts of this case so as to charge plaintiff with responsibility for said pre-existing debts which were discharged out of the proceeds of the mortgage loan in question?

From the admitted facts and the record we make the following

### FINDINGS OF FACT

1. Plaintiff, Charlene Savage Williard, formerly Charlene Savage, is the widow of Joseph P. Savage who died October 6, 1965. She has since remarried.

2. Defendant, Millersburg Trust Company, is a Pennsylvania banking corporation with its principal office in Millersburg, Pa.

3. On March 29, 1963, and for many years prior thereto, plaintiff and her late husband were record owners of property known and numbered as 133 East Market Street, Williamstown, Pa.

4. On that date, a bond and mortgage naming Joseph P. Savage and Charlene Savage, his wife, as obligors and mortgagors and Millersburg Trust Company as obligee and mortgagee to evidence and secure a loan of $12,000 was delivered to the bank; the mortgage being recorded on April 2, 1963, in the Recorder's Office of Dauphin County in mortgage book T, vol. 42, p. 274.

5. Plaintiff did not affix her signature to either of said documents nor had she authorized her late husband or any other person to do so.

6. The aforesaid mortgage is a lien of record against premises 133 East Main Street, Williamstown, Pa., of which plaintiff is now the sole owner as surviving tenant by the entireties.

7. The signature of the late Joseph P. Savage and the purported signature of plaintiff to said documents were witnessed by an official of defendant who has no recollection of the transaction at the present time.

8. From the proceeds of the mortgage loan in

question of $12,000, defendant disbursed the sum of $11,178.15 by check payable to Miners National Bank of Pottsville; $32.50 by check payable to an attorney; and $789.35 by credit entry in favor of a joint checking account of plaintiff and her late husband in defendant bank, which account had been dormant for a number of years.

9. The Miners National Bank of Pottsville applied the proceeds of the check payable to it, $11,178.15, in discharge of the following obligations owned by it and all of which were liens of record against the identified real estate as of April 2, 1963:

(a) balance of principal and accrued interest of $2,489.64 on a genuine note of plaintiff and her late husband dated February 8, 1962, and reduced to judgment;

(b) balance of principal and accrued interest of $622.94 on a genuine note of plaintiff and her late husband dated July 1, 1959 and reduced to judgment; and

(c) balance of principal and accrued interest of $8,065.57 on loan secured by mortgage upon the identified premises and against plaintiff and her late husband dated May 29, 1959, and on loan evidenced by note reduced to judgment against plaintiff and her late husband dated April 2, 1962, as to which documents plaintiff also claims she did not affix her signature nor authorize any person to do so on her behalf.

10. No notice of the mortgage loan in question being negotiated nor of the manner of the disbursement of the loan proceeds was given to plaintiff, nor did she become aware of it until shortly before the death of her husband while attending her husband in a Philadelphia hospital. At that time, on being advised by defendant that an installment was due on a mortgage loan, she arranged for payment thereof through a relative, even though she knew nothing of it.

11. After her late husband's death, plaintiff paid one installment on the mortgage loan in question before consulting an attorney.

12. Prior to his death, the late husband of plaintiff drew two checks on the aforesaid joint checking account in defendant bank in the sum of $95.76 to a heating oil company and in the sum of $172.76 to a plumbing firm for past services or supplies afforded plaintiff and her late husband.

13. None of the proceeds of the mortgage loan in question, except possibly as noted immediately above, was used to improve the premises in question or otherwise directly benefit said real estate.

## DISCUSSION

As previously noted, defendant concedes that plaintiff's signatures to the bond and mortgage in question are forgeries. It also recognizes that these documents must be declared illegal and void as to plaintiff and cancelled as prayed for by plaintiff. It urges, however, that under applicable principles of the doctrine of unjust enrichment the real estate in question should be subjected to an equitable lien in its favor for $3,381.10, being that portion of the proceeds of the mortgage loan used to discharge valid pre-existing debts of plaintiff and her late husband, or used for their mutual benefit.

Defendant relies upon the Restatement, Restitution, and a number of our appellate court decisions which adopted and followed the restatement under their facts. Plaintiff asserts that our appellate courts have never accepted the broadest possible application of the restatement, particularly where one who seeks application of the doctrine of unjust enrichment is a volunteer or acts negligently with respect to the transaction out of which the application of the doctrine is sought.

There is no question in the present case that defendant bank in utilizing two common practices incident to settlement of a mortgage loan transaction opened the door for its present predicament that good practice would surely have kept closed. In not requiring the presence of plaintiff at settlement and in not disbursing the loan proceeds to the debtors or requiring them to formally acknowledge some other distribution, defendant bank encouraged the deceased husband's fraud upon it and was guilty of negligent practices as to plaintiff.

It is equally clear, however, to the extent that the proceeds of the mortgage loan were used to discharge admittedly valid pre-existing debts of plaintiff and her late husband which were liens upon the real estate in question, plaintiff was materially benefited.[1] Absent the mortgage transaction in question, upon the death of her husband, she would have remained liable for these debts and the real estate would have continued to be subject to their terms as security for payment.

Keeping in mind that we are dealing with an equitable principle, should plaintiff, under these circumstances, be made responsible to defendant for these discharged prior obligations which total $3,112.58?

If we accept the reasoning of the Luzerne County Court in First Federal Savings & Loan Assn. v. Reedy, 35 D. & C. 2d 299 (1964), we would declare the doctrine of unjust enrichment inapplicable and deny defendant's prayer for an equitable lien. In that case, plaintiff, as mortgagee of record, sought such a lien under facts strikingly similar to the instant case. There, defendant's signature to a mortgage had been forged presumably by his wife who later died, where-

---

[1] As to the other alleged benefits derived by plaintiff out of the proceeds of the mortgage loan, we consider proof of benefit to the property or plaintiff to be inadequate and speculative and do not further consider these items.

upon defendant became the sole owner of the property. Relying upon the validity of the mortgage, plaintiff mortgagee had paid and satisfied liens against defendant's real estate amounting to $1,096.76. It is this amount for which plaintiff sought to hold defendant responsible. Defendant filed preliminary objections in the nature of a demurrer. By treating the demurrer as a motion for a more specific complaint, the court did not finally dispose of the matter. However, after citing and discussing Restatement, Restitution §162 and a number of our appellate court decisions, it went on to observe, pp. 303-05:

"It is to be noted at the outset that the Gladowski case[2] is concerned with a failure of title on the part of the mortgagors; the Campbell case[3] is concerned with a void mortgage. These situations have been treated differently by the courts. See 151 A.L.R. 423; 43 A.L.R. 1393, supplemented by 151 A.L.R. 407.

"The greatest difficulty confronting the courts in applying the equitable doctrine of subrogation to the lien of a prior encumbrance, in favor of one furnishing money to discharge the lien, is the equitable rule stated above that subrogation will not be decreed in favor of a mere volunteer who, without any moral or legal duty to do so, pays the debt of another.

"It appears that in those cases involving a failure of title on the part of the mortgagors, most jurisdictions allow subrogation to be decreed. Pennsylvania is in accord, as indicated in Gladowski v. Felczak, supra. However, in the situation where the mortgage is void because it has been executed without the knowledge or consent of the mortgagor, Pennsylvania adopts the minority view declaring that the mortgagee is a volunteer and not entitled to subroga-

---

[2] Gladowski v. Felczak, 346 Pa. 660 (1943), heavily relied upon by defendant in this case.

[3] Mary W. Campbell v. Foster Home Association, 163 Pa. 609 (1894).

tion: Campbell v. Foster Home Assn., supra. Although there has been a tendency on the part of the courts to expand the area in which equitable liens will be granted, we are presently obliged to adhere to the precedents pronounced by our Pennsylvania appellate courts and until there is appellate determination to the contrary, we are precluded from decreeing equitable relief in the instant matter.

"Before final determination is made herein, reference should be made to the case of Meehan v. Cheltenham Township, 410 Pa. 446. Although in that case the court is dealing with a situation regarding improvements to one's property, the same underlying principles of equitable liens are considered. In that case the court said: 'The construction of these improvements was not performed at appellee's request.' This, of course, gives credence to the doctrine that an equitable lien will not be enforced in favor of a volunteer. The court goes on to say:

" 'Moreover, even if the enrichment of appellee were established, there would be no recovery in this case. As noted above, the mere fact that one party benefits from the act of another is not of itself sufficient to justify restitution. There must also be an injustice in permitting the benefit to be retained without compensation.

" 'The Restatement of Restitution sets forth various rules for the determination of whether the retention of a particular enrichment is unjust. Section 110 deals with the situation where a third party benefits from a contract entered into between the other parties. It provides that, in the absence of some misleading by the third party, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third party . . . Appellee in no way induced appellant to enter into this relationship. In such a situation, appellant cannot shift the loss resulting from its error in judgment to

one who may have been indirectly benefited by the performance of these services.'

"There is one factor in the Meehan case, supra, which is not present in the instant matter. In the Meehan case there was doubt as to whether or not the improvements alleged by the appellant actually resulted in financial benefit to the appellee. There is no question in the case before us that defendant was directly benefited. Despite this additional fact of a direct benefit, the Meehan case does not go so far as to say that an equitable lien will be granted if the benefit is direct. It requires in addition thereto that there must be some misleading or inducement by the third party. In the instant matter no misleading or inducement is alleged by plaintiff and, therefore, the case before us is not controlled by Meehan. Again it appears that we are constrained by the appellate courts from granting equitable relief."

We are not persuaded that defendant in the instant case is a "volunteer" within the meaning of the appellate decisions denying equitable relief to all such volunteers, nor that the doctrine of unjust enrichment in all of its many forms of expression has been uniformly denied to all such volunteers. We are convinced, however, that it is unavailable to defendant in this case. As between plaintiff and defendant, it is plaintiff who. is blameless in the fraud perpetrated upon both plaintiff and defendant, whereas defendant is culpable in its careless handling of the settlement of the mortgage transaction by which the fraud was perpetrated. Nor did the real estate itself directly benefit through use of the proceeds for improvements and the like which is frequently a controlling criteria for the application of the doctrine. It is true that plaintiff was materially benefited in the discharge of a pre-existing personal liability for which the real estate was security by lien, but if this factor

alone impels the application of the doctrine, then defendant's culpability is remitted by equity of one who seeks equity. We believe this to be unjust.

A number of decisions relied upon by defendant and not discussed by the Luzerne County Court in Reedy all disclose facts and a conclusion which we believe are essentially based upon a balancing of equities between the contesting parties, and, on analysis, support our conclusion and not defendant's position.

In Stanko v. Males, 390 Pa. 281 (1957), plaintiff husband sought to cancel a deed upon which his signature had been forged by his wife in conveying entireties' property to a daughter and son-in-law who paid the wife $2,000 and assumed a mortgage on the property. When he became aware of the transfer, the husband sought to cancel the deed. While they were record owners, the daughter and son-in-law had made improvements to the property and had met required mortgage amortization payments. Having considered and concluded that all parties were equally blameless in the fraud perpetrated by plaintiff's wife, the court said, pp. 286, 287:

"It is a well settled doctrine of equity that when a bona fide possessor of property makes improvements upon it, in good faith and under an honest belief of ownership, and the real owner for any reason seeks equitable relief, the court, applying the familiar principle that he who seeks equity must do equity, will compel him to pay for the improvements to the extent that they have enhanced the value of the land. Putman v. Tyler, 117 Pa. 570, 588, 12 Atl. 43 (1888); 4 Pomeroy, Equity Jurisprudence, §1241 (5th ed. Symons, 1941); Restatement, Restitution, §42 (1) (1937); Annotation, 104 A.L.R. 577, 580-584 (1936). See Gray v. Leibert, 357 Pa. 130, 137-38, 53 A. 2d 132 (1947). So also, the owner is required to make compensation for

payments made to discharge claims against the property. Haverford Loan & Building Association of Philadelphia v. Fire Association of Philadelphia, 180 Pa. 522, 37 Atl. 179 (1897); Iron City Tool Works v. Long, 4 Sadler 57, 7 Atl. 82 (1886); Restatement, supra, §43(1).

"Under the circumstances of this case justice requires that the decree be modified so as to include therein directions that the plaintiff pay the defendants an amount equal to the tax and mortgage expenditures made by them, plus the expenditures made for the improvement and necessary maintenance and insurance of plaintiff's property to the extent that the property was benefited thereby, less the value of the use made of the property and the rents received therefrom by the defendants."

A careful analysis of this case leads us to conclude that an important, if not controlling, factor was the equality of innocence of those upon whom the fraud was committed, thus dictating an application of the doctrine of unjust enrichment in the form of a direction that plaintiffs pay to defendants as a condition to cancellation of the deed the value of the improvements and the amount of mortgage amortization.

In Smith v. Smith, 101 Pa. Superior Ct. 545 (1931), relied upon by defendant, much of what is said is dicta in sustaining an appeal from the lower court. In this case, a son and namesake of the owner of real estate, who had several other children, after the owner's death represented himself to be his father in a complex series of conveyances and mortgage transactions whereby he became the ultimate record owner of the property subject to several mortgages. Upon learning of the fraud, the other children sought cancellation of the several transactions which the lower court decreed subject to their paying to one of

the mortgagees of a void mortgage an amount used in that mortgage financing to discharge a pre-existing valid mortgage of the father. On appeal by this mortgagee for additional reimbursement of the amount loaned, it was refused. In commenting upon the lower court's action in directing partial reimbursement as a condition of a decree of cancellation, although this was not an issue on appeal, the court said, p. 550:

"It was contributing to the payment of an incumbrance upon a property to which it assumed it had a good title as mortgagee, when it had none. The loan was fraudulently obtained by the pretender, Smith, who appropriated the proceeds to his own use, except as part was paid in satisfaction of plaintiffs' liability to pay only the balance due on a debt which, less the sums already paid, then amounted only to $724.42; (cf. Consolidated Building and Loan Association v. Shipley, 95 Pa. Superior Ct. 232, 237). This is the extent of the benefit received by plaintiffs out of the settlement, though the whole transaction resulted in the payment of the $2,000 mortgage which was then satisfied." [4]

Although the court in this case does not specifically discuss the innocence or culpability of the parties as to the fraud committed and simply mentions the innocence of plaintiffs and the good faith of appellant mortgagee, we are convinced that this factor played an important role in its decision.

---

[4] It is interesting to note that the court characterized the appellant mortgagee a volunteer as to plaintiffs with respect to the sums paid out on its mortgage loan. It said, p. 550:

"The Apex Association had no relations of any kind with the plaintiffs; they did not require appellant to pay anything, knew nothing about it until afterward when the fraud perpetrated by their defendant brother was discovered; as to plaintiffs, the Apex Association was a volunteer."

Defendant here can advance no such contention as the role it played, however innocent or otherwise blameless, materially aided plaintiff's late husband in perpetrating a fraud from which both plaintiff and defendant suffered. In rectifying the fraud, it is not possible to restore both parties to their identical prior position without ignoring defendant's culpability. This we deline to do.

For the foregoing reasons, we enter the following

## CONCLUSIONS OF LAW

1. That certain bond and warrant dated March 29, 1963, between Joseph P. Savage and Charlene Savage, his wife, as obligors, and Millersburg Trust Company, as obligee, in the sum of $24,000 conditioned upon payment by the obligors to the obligee of the sum of $12,000, together with interest within the period and by the monthly payments as therein provided is illegal and void as to Charlene Savage, her signature thereto being a forgery.

2. That certain mortgage dated March 29, 1963, between Joseph P. Savage and Charlene Savage, his wife, mortgagors, and Millersburg Trust Company, mortgagee, given to secure payment of $12,000, as aforesaid, on premises known and numbered as 133 East Market Street, Williamstown, Pa., and recorded in the Office of the Recorder of Deeds of Dauphin County, Pennsylvania, in mortgage book T, vol. 42, p. 274, is illegal and void as to Charlene Savage; her signature thereto being a forgery.

3. Joseph P. Savage, the other obligor and mortgagor in the aforesaid documents being deceased, said documents must be cancelled and so marked of record.

4. Being culpable towards plaintiff in the mortgage transaction represented by the aforesaid documents which arose out of a fraud committed by Joseph Sav-

age in forging Charlene Savage's signature to said documents, Millersburg Trust Company is not entitled by way of equitable lien or otherwise to reimbursement from Charlene Savage of the sum of $3,381.10.

5. The equitable doctrine of unjust enrichment is not applicable to Millersburg Trust Company in support of its claim for reimbursement as aforesaid.

Accordingly, we enter the following

### DECREE NISI

1. That certain bond and warrant dated March 29, 1963, between Joseph P. Savage and Charlene Savage, his wife, as obligors, and Millersburg Trust Company, as obligee, in the sum of $24,000 conditioned upon payment by the obligors to the obligee of the sum of $12,000, together with interest within the period and by the monthly payments as therein provided is hereby cancelled.

2. That certain mortgage dated March 29, 1963, between Joseph P. Savage and Charlene Savage, his wife, mortgagors, and Millersburg Trust Company, mortgagee, given to secure payment of $12,000, as aforesaid, on premises known and numbered as 133 East Market Street, Williamstown, Pa., and recorded in the Office of the Recorder of Deeds of Dauphin County, Pennsylvania, in mortgage book T, vol. 42, p. 274, is hereby cancelled.

3. Unless exceptions are filed hereto within 20 days hereof, the prothonotary shall enter a final decree as of course and shall deliver a certified copy of the final decree and this order to the Recorder of Deeds of Dauphin County, Pa., who shall appropriately mark the record of the aforesaid mortgage giving public record notice of this decree.

The prothonotary shall promptly notify the parties or their counsel of the entry of this decree nisi.