275 Pa. Superior Ct. 594 (1980)
419 A.2d 60
R.M. SHOEMAKER CO., Appellant,
v.
SOUTHEASTERN PENNSYLVANIA ECONOMIC DEVELOPMENT CORPORATION, the Greater Philadelphia Foundation, and Girard Trust Bank.
Superior Court of Pennsylvania.
Argued September 10, 1979.
Filed February 22, 1980.
*597 Victor Wright, Philadelphia, for appellant.
Joseph H. Huston, Jr., Philadelphia, will not file a brief on behalf of Southeastern Pennsylvania Economic Development Corp. and The Greater Philadelphia Foundation, appellees.
David P. Bruton, Philadelphia, for Girard Trust Bank, appellee.
Before PRICE, VAN der VOORT and WIEAND,[*] JJ.
WIEAND, Judge:
Is a lending institution liable to a general contractor for work done pursuant to contract with an owner where the owner has become insolvent and there are loan proceeds which remain undistributed? This is the issue raised on appeal following the lower court's granting of the lender's motion for summary judgment.
In 1972, when the Ford Motor Company determined to close the old Philco plant at Wissahickon Avenue and Abbottsford Road in Philadelphia, the Greater Philadelphia Chamber of Commerce negotiated an agreement by which Ford conveyed the property to the Greater Philadelphia Foundation (GPF), a nonprofit corporate affiliate of the Chamber. In turn, GPF entered a lease and lease back arrangement with Southeastern Pennsylvania Economic Development Corporation (SPEDCO). Plans were made to renovate the premises and convert the same into a modern *598 industrial complex to be known as the SPEDCO Industrial Mall. It was hoped that by attracting commercial and industrial tenants jobs could be made available to offset the loss of jobs caused by the Philco plant shutdown.
Financing for the project was obtained from three sources. The first was a two million dollar loan from the Pennsylvania Industrial Development Authority (PIDA), an agency of the Commonwealth of Pennsylvania. The second was a working capital loan of $450,000 from a consortium of three banks, Philadelphia National Bank, First Pennsylvania Banking and Trust Company, and Girard Trust Bank. The third source was a one million dollar construction loan from the same three banks. Girard acted as the disbursing institution under the three loans.
R.M. Shoemaker Co., appellant, was the general contractor employed by GPF and SPEDCO to do the work pursuant to a construction agreement executed on September 12, 1972. According to the terms thereof, Shoemaker was to be paid its costs, plus 4% overhead and a profit of 6%. Initial construction costs were paid from the proceeds of the PIDA loan. Appellant's vouchers were submitted for approval to an architect and SPEDCO's construction committee, and funds were disbursed by Girard in accordance therewith.
By March, 1974, only $19,500 of the PIDA loan remained undisbursed. The $450,000 working capital loan had also been paid out. On March 19, 1974, Girard received appellant's voucher No. 11 for $243,595.14; on April 8, 1974, a final voucher for $6,613.20 was also received. The construction loan agreement contained a clause which required that at the time of disbursing loan proceeds "no event of default hereunder shall have occurred and be continuing." An event of default was defined to include the insolvency of GPF. Girard believed that GPF had become insolvent by March 19, 1974 and refused to disburse the proceeds of the construction loan. The remaining PIDA funds were disbursed, however, for all requirements of the loan agreement had been satisfied, and GPF's insolvency was not a basis for refusing disbursement of such funds. This left unpaid a Shoemaker claim for $230,568.02.
*599 Subsequently, the Philco plant property was conveyed to another nonprofit corporation, and the project was developed further.
Appellant filed a petition for declaratory judgment to obtain a judicial determination of its rights and the liabilities of Girard, GPF and SPEDCO under the several agreements. On August 22, 1977, GPF and SPEDCO filed an amended answer admitting liability to Shoemaker for the amount of its claim, and judgment was entered against them. Both are insolvent. Girard filed a motion for summary judgment. This was granted, and an appeal followed.
The law on summary judgments is well settled and was set forth in Husak v. Berkel, Inc., 234 Pa.Super. 452, 458, 341 A.2d 174, 177 (1975), as follows: "Summary judgment is made available by Pa.R.C.P. 1035 when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. This severe disposition should only be granted in cases where the right is clear and free from doubt. To determine the absence of a genuine issue of fact, the court must take the view of the evidence most favorable to the non-moving party, and any doubts must be resolved against the entry of the judgment." (Citations omitted). See also: Acker v. Palena, 260 Pa.Super. 214, 218-219, 393 A.2d 1230, 1232 (1978); Amabile v. Auto Kleen Car Wash, 249 Pa.Super. 240, 376 A.2d 247 (1977).
Appellant is unable to show any contract by which Girard agreed to make payments directly to the general contractor. There simply was no contract between Girard and the contractor. Although Girard agreed to advance money as the work of construction progressed, pursuant to vouchers submitted by the general contractor, its contract to do so was with GPF. Thus, only GPF acquired enforceable contractual rights to require disbursement of loan proceeds.
*600 Appellant was not a third party beneficiary to the loan agreement. In order that a third person acquire rights in a contract, both parties to the contract must so intend and must indicate that intention in the contract. A promisor cannot be held liable to an alleged third party beneficiary unless the latter was within his contemplation at the time the contract was entered and such liability was intentionally assumed by him in the undertaking. The obligation to the third party must be created and must affirmatively appear in the contract itself. Spires v. Hanover Fire Ins. Co., 364 Pa. 52, 56-7, 70 A.2d 828, 830-31 (1950); Hillbrook Apartments, Inc. v. Nyce Crete Co., 237 Pa.Super. 565, 571, 352 A.2d 148, 151 (1975).
The terms of the loan agreement between Girard and GPF make it abundantly clear that they did not intent by their contract to confer upon the general contractor independent contractual rights. Cf. Demharter v. First Federal Savings & Loan Ass'n. of Pittsburgh, 412 Pa. 142, 194 A.2d 214 (1963). Thus, their agreement specifically provided in Section 6.1:
"No Third-Party Beneficiaries. No part of the Loan will be, at any time, subject or liable to attachment or levy at the suit of any creditor or Borrower, or at the suit of the General Contractor, any subcontractor or materialman, or any of their creditors."
Appellant argues that this language is ambiguous and was not intended to preclude third party rights under the loan agreement. We must reject this argument. The parties clearly intended to preclude the assertion of contractual rights by the general contractor or other third persons against undistributed proceeds in the hands of the lending institution. The effect of the agreement cannot be avoided by using declaratory judgment proceedings rather than another type of proceeding.
In the proceedings in the court below, appellant attempted to show that in fact GPF was not insolvent at the time Girard refused to advance funds under the construction *601 loan. GPF has not challenged Girard's refusal to advance moneys, and Shoemaker acquired no rights under the loan agreement. Therefore, even if GPF had been solvent and Girard had been in violation of the loan agreement by refusing to advance money, only GPF could complain of Girard's breach. Shoemaker was not a party to the agreement and had no standing to enforce it by legal action.
Appellant also argues that it should be entitled to assert an equitable lien on loan proceeds remaining undistributed. An equitable lien arises from a contract indicating an intent to make certain property security for an obligation or from a situation which otherwise would result in unjust enrichment. 22 P.L.E., Liens § 3. See also: Gladowski v. Felczak, 346 Pa. 660, 31 A.2d 718 (1943). In order for an equitable lien to arise there must be an obligation owing by one person to another, a res to which that obligation attaches, and an intent by all parties that the property serve as security for the payment of the obligation. Mermon v. Mermon, 257 Pa.Super. 228, 235-36, 390 A.2d 796, 799-800 (1978).
Here, there was no contract by which Girard became obligated to appellant. The latter's work was performed pursuant to a written agreement with SPEDCO and GPF. The terms of the construction contract defined Shoemaker's right to payment by the owners. No other means of payment and no security for payments were provided for in that agreement. It is apparent, therefore, that appellant's work was done in reliance upon the credit of the owners.
It has not been shown that Girard has been unjustly enriched by appellant's work. Girard simply withheld payments under the loan agreement when it became obvious that the job was facing financial difficulty because of GPF's apparent insolvency. Girard did not go into possession or acquire title to the real estate. It has not been shown that it made a profit on the transaction. Girard simply refused to advance loan proceeds when it perceived an increased potential for loss.
*602 Appellant urges that we follow decisions in California which have permitted equitable liens to be asserted by contractors against undistributed construction loan proceeds.[1] This we decline to do. The legislature in this state has adopted a mechanics' lien law to protect contractors, and we perceive no good reason for the courts to legislate additional security by judicial decree. See: First National State Bank of New Jersey v. Carlyle House, Inc., 102 N.J. Super. 300, 246 A.2d 22 (1968), aff'd per curiam, 107 N.J.Super. 389, 258 A.2d 545 (1969); Lampert Yards, Inc. v. Thompson-Wetterling Construction & Realty, Inc., 302 Minn. 83, 223 N.W.2d 418 (1974). See also: Myers-Macomber Engineers v. M.L.W. Construction Corporation, 271 Pa. Super. 484, 414 A.2d 357 (1979).
As between two innocent parties, appellant fails to demonstrate legal or equitable reason for altering the rights and remedies for which each party contracted. Neither justice nor equity compels a modification of the terms and risks accepted in writing by the contractor solely for the purpose of relieving the contractor from a loss resulting from reliance on the credit of the owners with whom it contracted. East Penn Contracting Corp. v. The Merchants National Bank of Allentown, 37 Leh.L.J. 268 (1977), aff'd, 254 Pa.Super. 613, 387 A.2d 114 (1978). Appellant had available security for its claim under the mechanics' lien laws but chose to waive that security. We will not rewrite the contracts of the parties to provide appellant with security for which it did not contract.
The judgment is affirmed.

*603 MEMORANDUM REPORTS
Reports of cases decided by the Superior Court in which the order, decree, judgment or decision of the court below was affirmed or otherwise disposed of without opinion or without extended opinion.

Notice to the Bar
The Superior Court of Pennsylvania, commencing with cases heard or submitted during the March 1979 session, adopted a practice whereby some cases are affirmed per curiam, without a published opinion. However, a memorandum opinion has been prepared and filed by the Superior Court in most of these cases and copies of the memorandum opinion have been forwarded to the chief counsel for the parties and to the lower court. These memorandum opinions contain the rationale of the Superior Court in reaching its decision. Copies of these memorandum opinions may be procured by members of the Bar or any member of the public at the prothonotary's office of the Superior Court in the district in which the case arose. These memorandum opinions are not to be considered precedent and cannot be cited for any purpose.
NOTES
[*] Judge DONALD E. WIEAND is sitting by special designation.
[1] The equitable lien was overruled by the California Legislature, which in 1967 enacted Section 3264 of the California Civil Code. It provided that ". . . no person may assert any legal or equitable right with respect to [any fund for payment of construction costs], other than a right created by direct written contract between such person and the person holding the fund," except as provided by statute. This statute has effectively abolished equitable liens against loan funds. Boyd v. Lovesee Lumber Co. v. Modular Marketing Corp., 44 Cal.App.3d 460, 118 Cal.Rptr. 699 (1975).