J-A30003-16

2017 PA Super 158

| | |
|---|---|
| US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR WELLS FARGO ALTERNATIVE LOAN TRUST, SERIES 2005-1 | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LESLIE M. FINKEL A/K/A LESLIE M. ALTIERI AND ALEXANDER BRYAN ALTIERI | |
| Appellants | No. 252 EDA 2016 |

Appeal from the Judgment Entered December 15, 2015
In the Court of Common Pleas of Northampton County
Civil Division at No(s): 2011-C-5023

BEFORE: BOWES, OLSON AND STABILE, JJ.

OPINION BY BOWES, J.: **FILED MAY 23, 2017**

Leslie M. Finkel a/k/a Leslie M. Altieri and Alexander Bryan Altieri appeal from the judgment entered December 15, 2015, in favor of U.S. National Association (the "Bank") as Trustee for Wells Fargo Alternative Loan Trust, Series 2005-1. Appellants challenge the trial court's June 26, 2013 order, as amended July 29, 2013, granting partial summary judgment in favor of the Bank and imposing an equitable lien on Appellants' property. After careful review, we vacate the judgment and remand for further proceedings in accordance herewith.

The record indicates that, on March 12, 2004, Leslie Finkel individually secured a $300,000 mortgage with Wells Fargo to purchase a residence

located at 4120 Douglas Drive, Bethlehem, Northampton County, Pennsylvania (the "Property"). She purchased the Property with Alexander Bryan Altieri, who was then her boyfriend. Mr. Altieri neither applied for nor executed the mortgage. Rather, he contributed $300,000 in cash to purchase the Property.

Ms. Finkel and Mr. Altieri were present at closing. Both of their names appeared on the deed to the Property as grantees. Ms. Finkel executed the mortgage and note, which were in her name alone. She also signed various notices and documents associated with the mortgage. A HUD-1 statement bears the signatures of Ms. Finkel and Mr. Altieri on the lines designated for "Borrowers,"[1] although neither of them recalled signing the document at closing.

In 2004, the mortgage was assigned to the Bank. Ms. Finkel and Mr. Altieri married on June 12, 2004, and continued to live at the Property. In February 2009, the mortgage was allegedly in default. On August 11, 2010, Ms. Finkel penned the first of three letters to the Bank seeking accommodation. She explained therein the reasons for the arrears on "our" mortgage, and how "they" intended to pay them.

---

[1]  Mr. Altieri is legally blind. He purportedly placed his mark on the document but his name was signed by another.

On June 2, 2011, the Bank commenced this action to reform the mortgage to add Mr. Altieri as a mortgage obligor on the Property. In the alternative, the Bank sought imposition of an equitable lien. The Bank pled that Mr. Altieri was not on the mortgage due to a "mutual mistake" which did not reflect the true intentions of the parties. Amended Complaint, 8/15/11, at ¶10. Appellants filed preliminary objections to the complaint and amended complaint, which were overruled. In their Answer and New Matter, Appellants denied that there was any mutual mistake, and averred that the mortgage, which was prepared by the Bank, was never intended to be in Mr. Altieri's name. Answer and New Matter and Counterclaims, 1/30/12, at ¶¶4, 5, 7. Appellants further alleged that the Bank "specifically and purposefully excluded [Alexander] Altieri from the loan." *Id*. at ¶10. They also filed counterclaims asserting violations of the Unfair Trade Practices and Consumer Protection Law, the Fair Debt Collection Practices Act, the Fair Credit Extension Uniformity Act, and the Equal Credit Opportunity Act.

At the close of the pleadings, the Bank moved for partial summary judgment on the equitable lien claim. At that point, minimal discovery was completed. The Bank had propounded requests for admissions, interrogatories, and requests for production of documents to which Appellants had responded. The trial court, by order of June 26, 2013, granted the Bank's request for partial summary judgment on the equitable

lien claim, basing its decision on the HUD-1 form designating Mr. Altieri as a "Borrower," Appellants' responses to requests for admission Nos. 6 and 8, Ms. Finkel's letters to the Bank, and Mr. Altieri's presence at the closing on the Property.

On July 3, 2013, Appellants asked the trial court to amend its order to include a determination of finality pursuant to Pa.R.A.P. 341(c), to permit an immediate appeal to this Court, which the trial court denied. The Bank sought clarification of whether the June 26, 2013 order imposing the equitable lien was interim or permanent relief. By order dated July 29, 2013, the court amended its earlier order to clarify that the equitable lien was indeed permanent and independent of the mortgage reformation claim.

On August 30, 2013, Appellants filed an appeal to this Court from the order granting partial summary judgment. This Court quashed the appeal on March 20, 2014, as interlocutory. ***U.S. Bank National Association v. Finkel***, 100 A.3d 313 (Pa.Super. 2014) (unpublished memorandum).[2]

Discovery continued on Appellants' counterclaims. On June 10, 2015, the Bank filed a second motion for summary judgment on those claims. Appellants sought reconsideration of the June 2013 order, as amended July

---

[2] This Court ruled that Appellants' prior appeal was not taken from a final order. Furthermore, we rejected Appellants' contention that it was an interlocutory appeal as of right from an attachment pursuant to Pa.R.A.P. 311(2).

2013, which imposed the equitable lien. By order dated December 15, 2015, the trial court granted the Bank's motion for summary judgment and denied reconsideration, thus finally disposing of all claims.

Appellants timely appealed and present three questions for our review:

A. Whether the trial court failed to properly apply the standard applicable to summary judgment motions under Rule 1035.2(1)?

B. Whether it was an error of law to conclude that no showing of injustice or unjust enrichment was required to establish an equitable lien?

C. Whether the court erred in failing to consider the nature in which title was held?

Appellants' brief at 4 (unnecessary capitalization omitted).

Summary judgment is proper "only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law." *Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175, 1179 (Pa. 2012). In determining whether to grant summary judgment, "the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party" and resolve all doubts as to the existence of a genuine issue of material fact against the moving party." *Nationwide Mut. Fire Ins. Co. v. Modern Gas*, 143 A.3d 412, 415 (Pa. 2016).

In reviewing the propriety of a trial court's grant of summary judgment, an appellate court also views the record in the light most

favorable to the non-moving party. The issue as to whether there are genuine issues as to any material fact presents a question of law, and therefore, our standard of review is *de novo,* and we need not defer to the determinations made by the trial court. *Id*. at 415. "[A]ll doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." **Daley**, **supra** at 1179. We will reverse the order of the trial court "only where it is established that the court committed an error of law or abused its discretion." **Phillips v. Lock**, 86 A.3d 906, 912 (Pa.Super. 2014).

Appellants characterize the motion for summary judgment herein as one filed prior to the completion of discovery pursuant to Pa.R.C.P. 1035.2(1). They maintain that summary judgment on this basis is only appropriate in cases where there is no dispute regarding a material fact, and that genuine issues of material fact precluded summary judgment herein. They contend that the purported admissions relied upon by the court were not admissions. Furthermore, Appellants contend that the court ignored factual issues, resolved credibility issues, and refused to permit evidence on equitable defenses. In sum, Appellants allege that the court erred in granting summary judgment on the equitable lien claim.

In order to determine whether there were genuine issues of material fact that precluded the entry of summary judgment, it is first necessary to determine what facts were material to the equitable lien claim at issue. "An

equitable lien arises from an obligation, usually monetary in nature, owing by one person to another, a *res* to which that obligation attaches, and an intent by all parties that the property serve as security for the payment of the obligation." ***Kern v. Kern***, 892 A.2d 1, 8 (Pa.Super. 2005); ***Hoza v. Hoza***, 448 A.2d 100 (Pa.Super. 1982). Such a lien is appropriate where the defendant's interest in the property is subject to an obligation owed to the plaintiff. ***Hoza***, ***supra*** at 104. As this Court held in ***R.M. Shoemaker & Co. v. Southeastern Pennsylvania Economic Development Corp.***, 419 A.2d 60, 63 (Pa.Super. 1980), "an equitable lien arises from a contract indicating an intent to make certain property security for an obligation or from a situation which otherwise would result in unjust enrichment." ***See also*** 22 P.L.E., Liens § 3; ***Gladowski v. Felczak***, 31 A.2d 718 (Pa. 1943).

In ***Mermon v. Mermon***, 390 A.2d 796, 799 (Pa.Super. 1978), we noted that a right to an equitable lien requires evidence that is "clear, precise and indubitable as to the intention of the parties." Furthermore, before the lien can be imposed upon a particular parcel of property to secure a debt, "there must be an agreement sufficiently clear and unambiguous evidencing such intent." ***Mermon***, at 800. We held in ***Mermon*** that "[t]he mere borrowing of money does not in itself give a lender a lien and 'in the absence of a showing of an intent to create it, an equitable lien will not arise in favor of one who advances money to pay the purchase price of realty.'" ***Id***.

The trial court found that the Appellants' responses to request for admissions numbers 6 and 8 "established that the Defendants have admitted to each element of an equitable lien." Order, 6/26/13, at 5. Specifically, the court found that Appellants admitted that "the mortgage was a purchase money mortgage obtained for acquiring the Property," and that "the Defendants intended that the Property served as security for the mortgage[,]" although Ms. Finkel denied that Mr. Altieri was a party to the mortgage. *Id*. It concluded further that Ms. Finkel admitted in her Answer that the mortgage was issued with the Property as security. The court viewed Ms. Finkel's response, "standing alone," as enough to establish the first requirement for an equitable lien.

The court also found that Mr. Altieri's signature on the HUD-1 form on the line designated "Borrower" constituted an admission of his intent. Although Mr. Altieri expressly denied that he was a party to the mortgage, a fact supported by the document itself, the court found that references in letters penned by Ms. Finkel to "our mortgage," "our monthly payment" and "when we set up our mortgage," together with the signed HUD-1 form, satisfied the "obligation requirement for an equitable lien." *Id.* Finally, Mr. Altieri's presence at closing, his subsequent marriage to Ms. Finkel, and his status as owner of the property demonstrated the requisite intent.

Appellants challenge the adequacy of the record in support of partial summary judgment, and dispute the weight accorded by the trial court to

the HUD-1 statement and the purported admissions. They argue that the HUD-1 form bearing Mr. Altieri's signature did not constitute proof of his intent to be obligated on the mortgage. Furthermore, they assert that an equitable lien requires proof of the requisite intent of all parties to the transaction. They contend that the Bank failed to adduce any evidence that it intended to include Mr. Altieri on the mortgage, and it was the Bank's burden to prove such intent. Appellants allege further that, since there was no agreement evidencing that intent, and the mortgage itself would seemingly refute such a notion, the Bank was required to prove unjust enrichment or some other basis for imposing the lien, which it failed to do.

Additionally, Appellants allege that the court ignored their unclean hands defense. They maintain that subsequent discovery proved that the Bank structured this transaction so that Ms. Finkel alone could obtain the financing, and it deliberately avoided participation by Mr. Altieri, who had a poor credit rating, to achieve that end. Appellants argue that the trial court failed to consider the entire record, to review it in the light most favorable to them as the non-moving party, and to recognize that additional discovery would lead to evidence material to the defense. Finally, Appellants assert the trial court resolved issues of fact that should have been reserved for the jury.

We note at the outset that the equitable lien was granted on a scanty record after only preliminary discovery. Furthermore, while it was

undisputed that Ms. Finkel owed a monetary obligation to the Bank based on the mortgage, Appellants contested Mr. Altieri's obligation. Even the trial court acknowledged that Mr. Altieri was not designated as a mortgagor, he did not sign that instrument or the note, and he denied any intent to be bound by the mortgage obligation.

The first question presented herein is whether there was any agreement indicating an intent by **all parties** to the transaction that the entire Property, not just Ms. Finkel's interest, serve as security for the payment of the mortgage. Ms. Finkel denied any intent to encumber Mr. Altieri's share of the property and Mr. Altieri denied any intent that his interest be subject to the mortgage. Appellants contend further that their responses to requests for admissions are incapable of the construction placed upon them by the court and do not excuse the requirement of an agreement. Appellants also allege that the Bank intentionally omitted Mr. Altieri from the mortgage so that his poor credit rating would not impede Ms. Finkel's qualification for financing. The Bank pled that his omission from the mortgage was a mutual mistake but offered no proof in support of that position.

Viewing the record as of the entry of summary judgment, we agree with Appellants that the purported admissions did not suffice to prove the requisite agreement and intent of the parties. Request for admission No. 6 asked Appellants to admit that, "The Mortgage is a purchase money

mortgage and was obtained for the express purpose of Defendants acquiring ownership of the 4120 Douglas Drive premises." Appellants' response to the request was "Admitted in part; denied in part." Appellants admitted that the mortgage was a purchase money mortgage. They denied the statement "to the extent that it indicates that Defendant, Alexander Bryan Altieri, obtained the mortgage or intended to be bound by the same."

Request for admission No. 8, which the trial court deemed conclusive, actually reads as follows:

> 8. Both Defendants intended that the 4120 Douglas Drive premises serve as security for the loan secured by the Mortgage.
>
> Admitted in part, denied in part.
>
> It is admitted that the Defendant, Leslie M. Finkel (a/k/a Leslie M. Altieri), intended that 4120 Douglas Drive serve as security for **her** obligation. However, the Defendants must qualify their response and deny certain portions as standing alone outside of the context of the whole truth such response conveys an unfair or unwarranted inference. **In regard to the Defendant, Alexander Bryan Altieri, such statement is denied as he only intended that the mortgage have the legal effect to which it states and he never had any obligation under the note or mortgage which would encumber his ownership interest. The transaction was intended to be a loan on the part of Leslie M. Finkel (a/k/a Leslie M. Altieri) for a property owned by both Defendants. The Defendants make no admission related to the legal significance of the document. . . .**

Plaintiff's Requests for Admission, No. 8 (emphasis added).

The court construed this response as a binding admission of intent on Mr. Altieri's part to be obligated under the mortgage. We do not. A request

- 11 -

for admission may relate to statements, opinions of fact, the application of law to fact, or to questions regarding the authenticity, execution, signing, receipt of documents. Pa.R.C.P. 4014(a). The Rule requires that "[a] denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify the answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder." *Id*. While "Any matter admitted under this rule is conclusively established," Pa.R.C.P. 4014(d), we have discouraged an inflexible application of the rule. We are mindful that Rule 4014 was designed to ensure that a case was determined on its merits, not disposed of summarily. *Coleman v. Wyeth Pharms., Inc.*, 6 A.3d 502 (Pa.Super. 2010). Moreover, the failure to deny conclusions of law are not deemed admissions as they are not within the permissible scope of such a request.

Request for admission No. 8 asked Appellants to admit or deny whether they intended that the Property serve as security for the mortgage loan. A fair reading of the response is that Ms. Finkel intended that the mortgage secure **her** interest in the Property; Mr. Altieri denied any obligation under the note or mortgage that would encumber **his** ownership

interest and he intended that the mortgage have that stated legal effect.[3] When viewed in the light most favorable to the non-moving party, we do not view this response as an admission that Mr. Altieri intended to encumber **his** interest in the Property.

Furthermore, we agree with Mr. Altieri that the Bank bore the burden of proving that **all** parties intended that the Property act as security for the mortgage as a prerequisite for an equitable lien. The Bank failed to conclusively establish that **it** intended that Mr. Altieri be obligated on the mortgage. The importance of this factor is evident in **Mermon**, **supra**. Therein, the parents paid the purchase price for property deeded in the name of their son and daughter-in-law, and provided funds for furnishings. There was no written agreement between the parents and children at the time of the transaction. Nine months later, the son wrote a letter to his parents and sister conveying his intent to pay off the loan that his parents gave him for the purchase of the home and furnishings. Approximately one and one-half years later, the daughter-in-law filed a complaint in divorce

---

[3] Appellants' view is consistent with the law of this Commonwealth. Two unmarried parties are presumed to hold title as tenants in common unless there is specific intent of survivorship. **See** Ladner on Pennsylvania Real Estate Law. Each tenant in common may convey, encumber or devise his or her undivided interest in real property. **Id**. at Section 8.03, p. 8-6 (Bisel 5th ed. 2006). Additionally, this Commonwealth subscribes to the theory that a mortgage constitutes a lien solely on the mortgagor's interest. **In re City of Philadelphia**, 63 A.2d 42 (Pa. 1949).

against the son. Thereafter, the parents filed a complaint in equity seeking imposition of either a resulting trust or an equitable lien on the property.

We affirmed the trial court's denial of relief under either theory. Absent was a clear and unambiguous agreement evidencing the intent to have the property secure payment of the obligation required for imposition of an equitable lien. We held that "in the absence of a showing of an intention to create it, an equitable lien will not arise in favor of one who advances money to pay the purchase price of realty." *Mermon*, *supra* at 800. Parents failed to adduce sufficient proof of the intent on the part of **all** parties.

Although the trial court acknowledged that Mr. Altieri was not a party to the mortgage and that he denied any intention to be bound by the mortgage, the court found Ms. Finkel's references to "our mortgage," "our monthly payment" and "when we set up our mortgage," together with the signed HUD-1 form, to be adequate refutation. We disagree. Ms. Finkel's 2010 and 2012 letters to the Bank are certainly not conclusive proof of Mr. Altieri's intent in 2004. In treating those comments as admissions, the trial court resolved genuine issues of material fact.

Finally, it was controverted that Mr. Alteri's purported signature on the HUD-1 form evidenced an agreement to be obligated as a Borrower on the mortgage entered into by Ms. Finkel. The form details the apportionment of fees, costs and taxes due at a property closing. We note that the form itself

states that the signature of the "Borrower" is merely an acknowledgement of receipt of the document. ("The undersigned hereby acknowledges receipt of a completed copy of pages 1 & 2 of this statement & any attachments referred to herein."). HUD-1 form. Thus, at most, the HUD-1 form raised genuine issues of fact regarding Mr. Altieri's intent. Based on the foregoing, we conclude partial summary judgment on the equitable lien was improperly entered as there were genuine issues of fact for the trier of fact.

Subsequent discovery further substantiates our conclusion. On June 11, 2015, Appellants filed a motion for reconsideration of the grant of partial summary judgment on the equitable lien, averring that evidence gleaned during further discovery not only justified reconsideration, but undermined the grant of partial summary judgment. Appellants maintained that, since the prior order was interlocutory, reconsideration was not time-barred. Nonetheless, the trial court denied reconsideration.

We find merit in Appellants' position. Discovery yielded evidence that the mortgage transaction was structured as the Bank intended. According to the loan originator, Evan Shenkman, the loan program was a high risk, subprime program that required little documentation. Deposition of Evan Shenkman, 9/26/13, at 36. He explained that these types of loans were based on credit score and down payment, with little concern for the mortgagor's source of income. *Id*. at 29. There was a disincentive to seek documentation as it could disqualify the applicant. *Id*. at 35. It was up to

buyers to determine who would be on the mortgage and it was not uncommon for the mortgagor to differ from the grantees on the deed.  *Id*. at 22.  Mr. Shenkman acknowledged that he, as a loan originator, would submit a mortgage application that identified the borrower and the person or persons taking title to the property.  *Id*. at 24.  He described it as a streamlined process.  He would send signed disclosures, credit reports, and an appraisal would be ordered, together with title insurance and homeowner's insurance.  *Id*. at 42.  The Bank prepared the documents.

Mr. Shenkman further explained that loan originators received a percentage of the loans they generated for the Bank, and the higher the volume, the higher the commission.  *Id*. at 40.  He admitted that he had discretion to omit individuals from the mortgage who might compromise a loan, and that he would exercise that discretion typically during the application process.  To accomplish that end, he would prepare an application in the name of the individual who wished to secure the loan and it would not be a joint application.  *Id*. at 204-05, 61-62.  After he reviewed the documents involved in the instant transaction, Mr. Shenkman concluded: "It appears as though we only wanted to use Leslie as the borrower" and that she was offering her interest in the property to secure the mortgage. *Id*. at 208-09.  He found no indication in the paperwork that the Bank did not understand the nature of the transaction.  *Id*. at 104.  He also pointed out that had the Bank and Mr. Altieri intended that he be obligated under the

mortgage, there was no reason why Mr. Altieri could not have taken title to the Property and signed the mortgage even if he did not personally qualify.

Mr. Shenkman and the closing officer, William Kays, also debunked the notion that the HUD-1 form was any type of agreement demonstrating an intent to be bound by the mortgage obligation. Mr. Shenkman described the form as "a document, signed at closing, which outlines the fees, loan amount, and sales price of the transaction." *Id*. at 56. A title company would prepare that document, although Mr. Shenkman would receive a copy of it prior to closing. Mr. Kays acknowledged that it was not uncommon to have individuals listed on the HUD-1 form who were not on the mortgage, and that a party's identification as a "Borrower" on the form did not establish anything about the party's intent to be on a mortgage. Deposition of William Kays, 11/1/13, at 20. Rather, it could simply indicate that an individual had a role in the transaction such as an ownership interest. *Id*. at 71. Moreover, he stated that it was common to see this scenario when unmarried individuals were on a deed but not on the mortgage. He observed that the HUD-1 form should match up with the Agreement of Sale, not the mortgage. *Id*. at 17.

Furthermore, the mortgage was solely in the name of borrower Leslie M. Finkel, designated as a single person, and secured "the performance of Borrower's covenants and agreements under this Security Instrument and the Note." Mortgage, 3/12/04, at 3. It stated, "For this purpose, Borrower

does hereby mortgage, grant and convey to Lender the following described property located in the County of North Hampton . . . See Deed." ***Id***. (emphasis added). It was apparent from the face of the deed that Ms. Finkel was not the sole grantee, but that the Property was being conveyed to Alexander Bryan Altieri and Leslie M. Finkel. Thus, the documents clearly revealed that two persons were purchasing the property, only one of whom was obligated under the mortgage.

In addition, Appellants maintain that, as tenants in common, the lien attached solely to Ms. Finkel's interest in the Property, and that their subsequent marriage did not alter the nature of their interests in the Property. The proceeds of the loan were used by Ms. Finkel to purchase her one-half interest in the Property. Deposition of Leslie Finkel, 7/15/13, at 17. Mr. Altieri paid $300,000 in cash to purchase his one-half interest in the Property. Thus, the record fails to support imposition of an equitable lien based on the alternative theory that Mr. Altieri was unjustly enriched by the situation. **See *R.M. Shoemaker & Co.*, *supra*.**

At the very least, there were disputed issues of fact regarding the existence of an agreement evidencing the requisite intent of all of the parties herein to have the entire Property secure payment of the obligation. Certainly, the Bank did not produce an agreement to that effect, or in lieu of same, clear and unambiguous admissions of such an agreement. There was proof adduced in discovery that the manner in which the mortgage was

structured was consistent with the Bank's routine practices at the time. If credited, such evidence would refute any claim that the parties intended that Mr. Altieri's interest in the Property secure Ms. Finkel's obligation. Moreover, such evidence could support a finding that the Bank had unclean hands in this transaction. Missing herein is "clear, precise and indubitable" proof as to the intention of the parties. ***Mermon***. ***supra*** at 799.

Viewing the evidence in the light most favorable to Appellants, as we must, we find that the trial court improperly dismissed or resolved genuine issues of material fact in granting partial summary judgment on the equitable lien claim in favor of the Bank.

Judgment vacated. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2017

- 19 -