## O'Hara Sanitation Co. Inc. v. Montgomery County

*Robert J. Kerns,* for O'Hara Sanitation.
*Arthur Lefroe,* for Plymouth Township.
*Bruce Eckel,* for Montgomery County.

BRODY, *J.,* March 27, 1986 — This opinion addresses those issues raised on appeal of the undersigned's December 16, 1985, rulings in the above captioned cases. These two cases, one in equity and one in mandamus, are on appeal to the Commonwealth Court.

## PROCEDURAL BACKGROUND

The above referenced actions were instituted by these plaintiffs by the filing of various complaints during the late summer of 1984, after a decision of the Montgomery County Commissioners to close the Montgomery County Landfill as of August 20, 1985. The commissioners' decision entailed limiting access to the landfill to those parties to whom the county was contractually obligated. This decision then barred plaintiffs access to the landfill, and these actions were instituted.

These two cases, a third filed by the Jenkintown Borough and a fourth filed by the Conshohocken Borough were consolidated and assigned to the undersigned for trial, by order of the Montgomery County Common Pleas Court President Judge Rich-

ard S. Lowe, dated October 3, 1984. Accordingly, pre-trial conferences with all parties were held, and the cases were promptly listed for trial. The trial of all cases began January 8, 1985, and was concluded January 24, 1985. During this time, voluminous testimentary and documentary evidence was presented to the court.

After careful consideration of the entirety of this evidence, and in light of the legal principles discussed infra, this court issued its decision in each case by decree nisi (resolving the actions in equity filed by O'Hara Sanitation Company Inc., Jenkintown and Conshohocken) and by order (resolving the mandamus action filed by Plymouth Township Council) dated February 4, 1985.

Subsequently, motions for post-trial relief were filed by O'Hara Sanitation Co. Inc., Jenkintown and Plymouth Township, (Conshohocken did not file post-trial motions) and a consolidated hearing on these motions was held November 7, 1985. On December 16, 1985, this court issued orders dismissing each motion for post-trial relief, leading to these appeals presently before this court. (Jenkintown did not appeal from the December 16, 1985, order dismissing its motion for post-trial relief.)

This court issued a memorandum opinion as an accompaniment to the order of December 16, 1985, dismissing the post-trial motions. The memorandum opinion fully set forth the legal and factual bases of this court's conclusions. The opinion is set forth in substance here to present the legal principles leading to the decisions which are now appealed.[1]

---

1. The following text, through page 468, is taken substantially from this court's memorandum opinion dated December 16, 1985.

## FACTUAL BACKGROUND

These cases arise from a decision of the Montgomery County Commissioners to close the Montgomery County Landfill as of August 20, 1985, to all parties with whom the county did not have written contracts.

The pertinent and relevant factual background surrounding this decision and its repercussions are fully discussed in the findings of fact presented by the trial court in conjunction with its February 4, 1985 decisions. These findings of fact, as relevant, are as follows.

## FINDINGS OF FACT

(1) On July 19, 1984, the Montgomery County Commissioners announced at a public meeting that they had unanimously decided to close the Montgomery County Landfill as of August 20, 1984, to all parties with whom the county did not have written contracts.

(2) The reasons for this decision were: (a) the report by the county consulting engineers that the landfill would be full by March 31, 1985, (b) the county's determination that it had written contracts that it was bound to honor, and (c) that the cost to county taxpayers of disposal of the solid waste covered by those contracts would be, with the projected rise in disposal costs, between $3 million and $5 million.

(3) Gannett Fleming Environmental Engineers Inc., the county's consulting engineers, had issued two reports to the county — a May 4, 1984, report stating that if the rate of dumping at the landfill at that time continued, the landfill could accept waste until March 31, 1985, and a report of July 31, 1984, stating that if only contracted trash were to be dumped, the landfill could accept waste until April

1, 1986. This was based upon current information and survey of the landfill.

(4) The county determined that it had contractual obligations to the following municipalities: Abington, Cheltenham, Springfield, Upper Dublin, Upper Moreland, Whitemarsh, Lower Merion, Upper Merion, West Conshohocken, Hatboro Borough and Willow Grove Naval Air Station.

(5) The landfill was closed for the disposal of solid waste to all but the above named municipalities on August 20, 1984.

(6) The county commissioners' decision to close the landfill to those who did not have written agreements with the county was made for the benefit of the taxpayers of Montgomery County.

(7) Montgomery County had first entered the field of solid waste disposition in 1971.

(8) In that year, the county acquired by lease space in quarries located in Upper Merion Township and West Conshohocken Borough for use as solid waste landfills known as Montgomery County Solid Waste Landfills Nos. 1 and 2.

(9) The county undertook various construction and site preparations to prepare the landfills to receive solid waste, and to comply with the commonwealth's requirements for a landfill permit, including sealing the base of the landfills and installing a leachate treatment system. The cost of these preparations necessitated a fee charge that exceeded the rates charged at other available local landfills.

(10) At this time, the county acquired by lease land situated in Upper Dublin Township for use as a trash transfer station known as Abington Transfer Station.

(11) The county also acquired by purchase various trucks, trailers and other equipment related to

the transportation and disposition of solid waste at the landfills and the Abington Transfer Station.

(12) The acquisition of the leasehold facilities and purchase of equipment by the county was financed by the county through general obligation bonds.

(13) During this time, the county entered into agreements relating to the disposal of solid waste with Abington Township (on May 25, 1971), Upper Dublin Township (June 17, 1971) and Springfield Township (July 16, 1971). These agreements provided for a slightly discounted rate for these municipalities.

(14) The landfill was opened for the deposit of solid waste in late 1971.

(15) Initially, and throughout the 1970s it was difficult for the county to get municipalities and private haulers to dump at the county's facilities because the per-ton price was higher than that charged at other landfills in the area.

(16) Curtis Campman, the director of Public Facilities in the 1970s, made contact with municipalities and some private-hauler associations to encourage them to enter into contracts with the county to commit all their solid waste to the county landfill, with an assurance of protection if they did so.

(17) It was Mr. Campman's position that the county was not getting the trash stream because there were unregulated landfills (particularly Moyer's landfill) where the tipping fees were considerably less than the county's.

(18) Until the capacity of the landfill became a documented problem, the county expressed its willingness to enter into long-term contracts with those municipalities willing to commit their entire waste stream to the landfill.

(19) During this period, none of plaintiffs approached the county to ask for a long-term contract.

(20) During this period, based solely on cost considerations, Plymouth Township primarily used the Moyer landfill instead of the Montgomery County facilities for the disposal of its solid waste until 1981.

. . .

(25) O'Hara Sanitation Company Inc., as were all the private haulers, was requested to dump its solid waste at the county landfill after it first opened.

(26) Plaintiff O'Hara failed to present evidence that he is an elector, citizen and resident and property owner in the Montgomery County.

(27) No evidence whatsoever was presented by plaintiffs that they did not have alternatives to dumping in the county landfill, available to them to dispose of their solid waste.

(28) The county entered agreements concerning use of the landfill and transfer station with certain municipalities in the years folowing the opening of the landfill. These were agreements with Cheltenham Township (August 29, 1974), Whitemarsh Township (August 29, 1974), Hatboro Township (April 7, 1975), Lower Merion Township (July 8, 1974) and the Department of the Navy (February 7, 1977).

(29) The agreements with Abington, Whitemarsh and Lower Merion obligated the county to pay indebtedness previously incurred by those municipalities in the construction of incinerators, the operation of which was to be discontinued because of efficiency and pollution problems.

(30) Being concerned about the future of solid waste disposal, the county in 1980 acquired two additional quarries in Plymouth Township to use for landfill purposes, one of which was leased back to

the condemnee for 10 years, and the other of which proved to be hydraulically connected to the Schuylkill River and not acceptable for landfill purposes.

(31) Beginning in about April 1981, the county amended the Whitemarsh agreement, requiring the county to accept solid waste from Whitemarsh through 1994; agreed to permit Upper Moreland Township to utilize the Abington Transfer Station; renewed the Hatboro agreement to deposit solid waste at the Abington Transfer Station; signed an agreement with Upper Merion to permit the township to use the landfill, and signed an agreement with Abington permitting the township to use the landfill through 1986, thereby automatically renewing the county's agreements with Cheltenham, Springfield and Upper Dublin, which provided that the county was obligated to accept solid waste from these municipalities "for and during the terms of the lease of the premises with Abington and any renewal thereof."

(32) These agreements recite, inter alia, that "the county has accepted responsibility in Montgomery County for compliance throughout the county with the Pennsylvania Solid Waste Management Act," and that "for the health and ecological welfare of its citizens, the county intends to coordinate the disposal of municipal solid waste by erection and operation of solid waste transfer stations to which municipalities and collectors could deliver solid waste for disposal by county."

(33) Thus, the county has agreements to accept solid waste from various municipalities. The majority of the contracts extend through 1986; that with Whitemarsh extends through 1994 and with Lower Merion through 1997.

(34) The county has also entered a three-party agreement for the sale of methane gas that has been generated by the solid waste in the landfills. By the agreement the county receives a 15 percent royalty from the sale of electricity generated by the gas.

(35) The county commissioner's decision to limit the use of the landfill beginning on August 20, 1984, was neither arbitrary nor capricious.

(36) There are no written agreements between the county and either of these plaintiffs.

## CONCLUSIONS

It is this court's considered conclusion that Montgomery County is not subject to any affirmative duty to keep the landfill open to all municipal and private haulers collecting trash within the county; neither the 1980 Solid Waste Management Act, 35 Pa.C.S. §6018-101 et seq. nor the Second Class County Code, 16 Pa.C.S. §3101 et seq., imposes such an obligation.[2]

In light of the resulting discretionary nature of the county's decision to maintain a landfill, this court is prohibited from interfering with or controlling any decisions of the county commissioners relating to the landfill's operation, absent a showing of an arbitrary and capricious abuse of discretion by county officials in their operation of the landfill.

The testimony presented in this case showed no arbitrary and capricious abuse of discretion of the commissioners in their decision of July 19, 1984.

## DISCUSSION

I. Whether the County is Subject to an Affirmative Duty to Provide Access to the Landfill to All Mu-

---

2. The court makes no determination on the issue of the right of the county to accept such responsibility.

nicipal and Private Haulers Collecting Solid Waste Within the County.

## A. *Statutory Interpretation*

Initially, in interpreting the 1980 Solid Waste Management Act, 35 Pa.C.S. §6018.101 et seq., and the Second Class County Code, 16 Pa. C.S. §3101 et seq., this court is guided by the Rules of Construction, 1 Pa.C.S. §1900 et seq, P.L. 1339, 1972. These rules provide that where the words of a statute are clear and free of ambiguity, they are to be implemented as stated, but that where interpretation is necessary, the aim of an interpreting court must be to ascertain the intent of the Legislature in passing a particular piece of legislation. See 1 Pa.C.S. §1921(a), (b). In performing this function, the court is directed to consider:

(1) the occasion and necessity for the statute,

(2) the circumstances under which it was enacted,

(3) the mischief to be remedied,

(4) the object to be attained,

(5) the former law, if any, including other statutes upon the same or similar subject,

(6) the consequences of a particular interpretation,

(7) the contemporaneous legislative history, and

(8) legislative and administrative interpretations of such statute. 1 Pa.C.S. §1921(c).

With these principles in mind, we examine the pertinent legislation in this case.

## B. *1980 Solid Waste Management Act*

We will first address plaintiffs' contention that the county has an affirmative duty to dispose of trash pursuant to the 1980 Solid Waste Management Act, 35 Pa.C.S. §6018.101 et seq. This argument is predicated on the definition of "municipality" in the act, stated at 35 Pa.C.S. §6018.103 as "a city, bor-

ough, incorporated town, township or county or any authority created by any of the foregoing," and on the requirement in 35 Pa.C.S. §6018.202 that: "Each municipality shall be reponsible for the collection, transportation processing, and disposal of municipal waste which is generated or present within its boundaries. . . . " Plaintiffs argue that since counties are included in the definition of municipality, and since each municipality is given a mandate to dispose of the trash generated within its borders, Montgomery County has an affirmative duty to permit access to the county landfill to haulers of all trash generated within the county's borders.

To buttress their contentions, plaintiffs argue that the 1968 Pennsylvania Solid Waste Management Act, 35 Pa.C.S. §6001 et seq., which was the law of the commonwealth from its enactment in 1968 until its repeal in 1980 upon the passage of the present act, imposed the same responsibilities on municipalities, but defined that term differently as "a city, incorporated town, township and borough." Plaintiffs contend that the addition of "county" in the present act imposes a responsibility on the county to dispose of the trash generated within its border.

This interpretation is not persuasive. Although the 1980 Solid Waste Management Act includes "county" in the definition of municipality, it does so in the alternative rather than the inclusive sense. The prior act, which is pertinent to our interpretation of the present act pursuant to the Rules of Construction, see 1 Pa.C.S. §1921(c), defined municipality as "a city, incorporated town, township *and* borough", 35 Pa.C.S. §6011 (emphasis added), whereas the present act reads, "a city, borough, incorporated town, township *or* county *or* any author-

ity created by the foregoing," 35 Pa.C.S. §6018.103 (emphasis added). This change, including "county" and "any authority created . . ." but using the conjunctive "or," can be read to indicate an intent to include in any particular use of "municipality" whichever of those enumerated bodies would be appropriate in a particular context.

A thorough reading of the present act in its entirety supports this interpretation of the change. In many places throughout the act, the word "municipality" is used in a broad sense that would indicate the inclusion of counties. An example would be where the act directs that "any person or municipality" obtain a permit for the hauling of trash or be subject to penalty. See 35 Pa.C.S. §6018.201(a), §6018.501(a), (b), (c). The word municipality is used here in its broadest sense, and the context indicates that these sections would be applicable to *each* of the governmental units described as municipalities. Examples of this use of "municipality" is also evidenced in the 1980 act at section 6018.104(10) and (11), authorizing the commonwealth Department of Environmental Resources to institute proceedings against "any person or municipality" and at section 6018.201(a), mandating that "no person or municipality" dispose of municipal waste or operate a waste processing facility without compliance with Department of Environmental Resources directives.

In several other sections of the act, however, the use of "municipality" would indicate an intent to distinguish between county and the other enumerated governmental bodies. For example, in 35 Pa.C.S. §6018.201(b), each "municipality of a certain population density is directed to submit a solid waste management plan to the Department of Envi-

ronmental Resources." The act then goes on to state that "nothing in this subsection shall prohibit such a *municipality* from requesting the *county* . . . to perform this function in its behalf." (emphasis added). This would indicate that a county is not mandated to submit a plan, despite the use of the word municipality in this section, but that a "municipality" can request a "county" to prepare a plan on its behalf. The act continues: "whenever a county prepares and adopts such a . . . plan . . . it shall provide for the participation and review of all affected municipalities." 35 Pa.C.S. §6018.201(b). "Municipalities" here is clearly used to indicate governmental bodies *other than* counties. See also 35 Pa.C.S. §6018.201(i), authorizing the Department of Environmental Resources to "provide technical assistance to counties, municipalities and authorities . . ."; and §6018.105(i), requiring that an invitation to all Environmental Quality Board deliberations be made to representatives of the "county *and* township, borough *or* municipality." (emphasis added).

Thus, the use of the conjunctive "or" in the definition of municipality leads to the conclusion that one or all of the meanings of that term are to be applied in a particular context as appropriate. This interpretation is in keeping with the general scheme of local government law in this commonwealth, where the word "municipality" is commonly used in the generic sense. See e.g., Pa. Const. Article IX, section 14, defining municipality as "county, city, borough, incorporated town, township *or* any similar general purpose unit of government . . ." (emphasis added); Pennsylvania Municipalities Planning Code, 53 Pa.C.S. §1001.07, which defines municipality as "any city of the second class A or third class, borough, incorporated town, township of the first or second class, county of the second class

A through eighth class, *or* any similar general purpose unit of government. . . ." (emphasis added).

Indeed, the use of the word municipality in 35 Pa.C.S. §6018.202, which is the section plaintiffs argue imposes an affirmative duty on the county in this case, cannot logically include county by the very language of that section. Section 6018.202 states: "Each municipality shall be responsible for the collection, transportation, processing and disposal of municipal waste which is generated or present within its borders. . . ." To read municipality to include county here is to impose a concurrent duty on both a county and the townships, incorporated townships, boroughs and cities within that county for the disposal of trash in each locality. To place a duty on two distinct governmental units to collect, transport, process and dispose of the *same* trash, where "no municipality can delegate the duties imposed by this section," is patently redundant, and would create much conflict and confusion.

The courts of this commonwealth are directed that in ascertaining the intent of the General Assembly with regard to particular legislation, it is presumed that the Legislature did not intend a result which is "impossible of execution or unreasonable." 1 Pa.C.S. §1922(1). The consequences of interpreting the Solid Waste Management Act to impose this concurrent duty on both counties and local governmental units would be politically and logically untenable. See 1 Pa.C.S. §1921(c)(6).

The inclusion of county in the definition of municipality, then, is moderated by the conjunctive "or" as used in that definition. In fact, the overall changes made in the redrafting of the Solid Waste Management Act do not indicate an intent to impose any new duties on entities which were not required to act under the prior law. The stated objec-

tives of the new act, 35 Pa.C.S. §6018.102, do not indicate an intent to alter the framework of the prior act, but rather emphasize the increasing concerns of our citizenry with the pressing issues of environmental quality (section 6018.102(1)), resource recovery (section 6018.102(2)), and the handling and disposal of hazardous wastes (section 6018.102(6), (7), (8), (9)). There is no indication of an intent to impose responsibilities on governmental bodies which were not imposed pursuant to the prior act.

Likewise, the reported legislative history of the current act does not point to a desire of the Legislature to impose an affirmative duty on county governments to dispose of all trash within their borders. See Senate Legislative Journal, 1980, pp. 1962-96, 1712-15; House Legislative Journal, 1979, pp. 2154-2187, 2205-24; 1980, 2014-28; see also, 1 Pa.C.S. §1921(c)(6), (7).

This court's conclusion, in light of the use of "or" in the definition of municipality, the legislative history and the overall changes in the act taken as a whole, is that the change in language in the 1980 Solid Waste Management Act reflects a recognition of the increasing problems in the area of solid waste management, but does not indicate a desire to impose additional duties on county governments.

C. *The Second Class County Code*

We then move to a consideration of whether the Second Class County Code, 16 Pa.C.S. §3101 et seq. imposes some affirmative duty on the county to keep the landfill open to all haulers. Plaintiffs argue that the code requires that the county open the landfill to all county haulers, rather than to just those with whom the county deems it is contractually obligated. This argument is based solely on 16 Pa.C.S. §5501, which states:"The title to all . . . real property acquired or that may hereafter be acquired

by or for the use of the county shall be vested in the county for the use of the people thereof and for no other purpose except as hereinafter provided."

Plaintiffs argue that the code grants the county the power to acquire land for the purpose of operating sanitary landfills, 16 Pa.C.S. §5193, and in fact to operate such landfills, 16 Pa.C.S. §5175, but point out that the latter section directs the county to do so "as provided in article 25 of this at. . . . " The first section of article 25 is 16 Pa.C.S. §5501, quoted above as containing the "for the use of the people (of the county)" language.

It is noteworthy that 16 Pa.C.S. §5501 requires only that title to property acquired by the county "shall be vested in the county for the use of the people thereof." Plaintiffs' argument as stated above imposes the word *all* into the statute, reading the language "for the use of *all* the people thereof." The statute requires that county lands be held for the use of county residents, but does not require their usage by all county residents. If Montgomery County were keeping its landfill open to haulers from Bucks or Chester County to the exclusion of plaintiffs herein, this argument would be more persuasive. This provision of the Second Class County Code, without more, in no way imposes any affirmative duty on the county to keep the landfill open to all haulers.

In fact, the Second Class County Code also specifies that the county shall have the power to "purchase, acquire by gift or otherwise, hold, lease, let and convey such real and personal property as *shall be deemed* to be *for the best interests of the county.*" (emphasis added). Thus, the code additionally provides that a decision as to what use of property would be in the best interest of the county is a *dis-*

*cretionary* matter for the county commissioners; this language makes emphatic the court's conclusion that the Second Class County Code does not create an affirmative duty of the county with regard to operation of the landfill.

### D. *Language of County Contracts*

Plaintiffs additionally point to various contracts between Montgomery County and other parties concerning the landfill, claiming that certain language therein creates an affirmative duty on the county to accept solid waste from all haulers.

Specifically, plaintiffs note clauses in these contracts which state: "The county has accepted responsibility in Montgomery County for compliance throughout the county with the Pennsylvania Solid Waste Management Act," and that "for the health and ecological welfare of its citizens, the county intends to coordinate the disposal of municipal waste by erection and operation of solid waste transfer stations to which municipalities and collectors could deliver solid waste for disposal by county."

This language, although indicative of the county's intention as to solid waste disposal in the region, cannot be held to impose a legal obligation on the county to accept waste at the landfill from those haulers to whom it is not contractually obligated. It is clear that in order for a third party to benefit from language of a contract to which it was not a party, both parties to the contract must *intend* that the third party would so benefit, and must indicate that intention in the contract. See *Hooper v. Commonwealth Land Title Insurance Company,* 285 Pa. Super. 265, 427 A.2d 215 (1981). The language referred to here, found in contracts between the county and other parties, cannot be binding on

plaintiffs here with respect to their right unless these plaintiffs were within the county's contemplation at the time it entered these contracts, and unless the county intentionally assumed this liability. See *R.M. Shoemaker Co. v. Southeastern Pennsylvania Economic Development Corporation*, 275 Pa. Super. 594, 419 A.2d 60 (1980).

There is no indication on the record before this court that Montgomery County explicitly intended to benefit those municipalities and private trash haulers who did not or would not enter contracts with the county through this language in contracts which were entered. Accordingly, this language cannot inure to the benefit of these plaintiffs in this action.

Simply put, the language cited by plaintiffs from the county's contracts with other municipalities is merely indicative of the county's intentions as to *those* municipalities, and does not create a legal obligation on the county to keep the landfill open to all haulers and municipalities.

E. *Conclusion*

Thus, this court finds that neither the 1980 Solid Waste Management Act, 35 Pa.C.S. §6018.101 et seq., nor the Second Class County Code, 16 Pa.C.S. §3101 et seq., nor the language in contracts between the county and third parties, imposes any affirmative duty on the county to permit access to the landfill to all haulers.

II. PLYMOUTH TOWNSHIP'S ACTION
IN MANDAMUS

In light of this court's conclusion that Montgomery County is under no affirmative duty to keep the landfill open to all haulers, regardless of whether or

not the county has contractual obligations to these haulers, the action in mandamus of Plymouth Township must of necessity be dismissed.

"Mandamus is an extraordinary writ which lies to compel the performance of a *ministerial act* or *mandatory duty* only where there exists a clear legal right in plaintiff and a corresponding duty in defendant and a lack of another appropriate and adequate remedy. An action in mandamus, therefore, seeks to compel public officials to perform acts that they are *obliged* to perform, and which involve no exercise of discretion or judgment." *Edwards Engineering Corp. v. Davies*, 80 Pa. Commw. 47, 471 A.2d 119 (1984), citing *Valley Forge Racing Association Inc. v. State Horse Racing Commission*, 449 Pa. 292, 297 A.2d 823 (1972) (emphasis in original).

In the instant action, it is clear that Montgomery County is not *obliged* to open the landfill to all haulers regardless of contractual status; there is no mandatory duty on the county to accept solid waste from Plymouth Township. Accordingly, the action of Plymouth Township was properly dismissed.

## III. STANDARD OF REVIEW OF THE COMMISSIONERS' DISCRETIONARY DECISION

While Plymouth Township's case against the county must fail in the absence of any affirmative duty on the part of the Montgomery County Commissioners to keep the landfill open to all haulers, plaintiff O'Hara Sanitation, is entitled to show that the commissioners abused their discretion in making their decision.

O'Hara Sanitation, however, bears a heavy burden. As stated by the Pennsylvania Supreme Court:

"In this area of the law, certain principles are well settled, and stem, in large measure, from judicial re-

spect for the doctrine of separation of powers in government. First, it is to be presumed that municipal officials properly act for the public good. Second, courts will not sit in review of municipal actions involving discretion, in the absence of proof of fraud, collusion, bad faith or arbitrary action equating an abuse of discretion. Third, on judicial review, courts, absent proof of fraud, collusion, bad faith or abuse of power, do not inquire into the *wisdom* of municipal actions and *judicial* discretion should not be substituted for *administrative* discretion." *Weber v. City of Philadelphia,* 437 Pa. 179, 183, 262 A.2d 297, 299 (1970) (citations omitted; emphasis in original).

In this case then, it is O'Hara Sanitation who bears the burden of overcoming the presumption that the Montgomery County commissioners acted in good faith in their July 1984 decision concerning the future of the landfill. This heavy burden was in no sense met by plaintiff. There was no indication that defendants acted fraudulently, collusively or abusively in their decision. It is not the role of the court to examine the *wisdom* of the county's decision to close the landfill to certain haulers; our review is limited to an assessment of whether this fraud or collusion was in fact shown. *Weber v. City of Philadelphia,* 437 Pa. at 179, 262 A.2d at 297; *Larecq v. Van Orden,* 21 Pa. Commw. 623, 346 A.2d 922 (1976). In fact, "[w]here complex questions of technology and finance are resolved by administrative decision, judicial review should be particularly restrictive." *Flaherty v. Port Authority of Allegheny County,* 450 Pa. 509, 299 A.2d 613 (1973).

In *Flaherty,* the mayors of metropolitan Pittsburgh municipalities sought a preliminary injunction against the construction of a rapid mass transit project. The Pennsylvania Supreme Court held that

defendants there were involved in discretionary administrative decision making regarding the mass transmit system, and noted its great reluctance to interfere with this discretion. The court stated:

"While discretionary power in the hands of a municipal authority or body does not immunize it from judicial review, the scope of that review must be limited to the determination of whether the exercise of discretion has been flagrantly abused. '*Judicial* discretion may not be subsituted for *administrative* discretion.' *Blumenschein v. Housing Authority of Pittsburgh*, 379 Pa. 566, 573, 109 A.2d 331, 335 (1954)"; *Flaherty v. Port Authority*, 450 Pa. at 299 A.2d at 618.

The *Flaherty* court went on to hold that the choice of systems made by defendants, despite plaintiffs' claims of abuse of discretion, was not fraudulent or capricious and was therefore not subject to review.

O'Hara Sanitation in this case seeks to prove that the commissioners acted fraudulently when they entered into contracts with certain municipalities regarding use of the landfill despite their knowledge that the landfill would certainly face capacity problems. This court need not pass on the wisdom of such action; suffice it to say that in light of the full panoply of circumstances in this case, this allegation is insufficient to prove any fraud or bad faith on the part of the county commissioners.

O'Hara Sanitation additionally claims that the county's decision to bar certain haulers from the landfill after August 1984 in order that it might honor these contracts is independently an arbitrary and capricious decision. Again, it is not this court's function to examine the wisdom of this decision, but rather to assess whether it was enacted in bad faith as an abuse of discretion. The testimony at trial indi-

cated that there was no such abuse; rather, it indicated that the commissioners based their decision to close the landfill on a report by the county consulting engineers that the landfill would be full by March 31, 1985, on the county's outstanding responsibilities to certain municipalities and other haulers to whom the county felt it had contractual obligations, and on the phenomenal cost to the county of fulfilling these obligations at alternative dumping cites if the county landfill were to close permanently.

O'Hara Sanitations's claims of an arbitrary and capicious exercise of discretion by the commissioners fail entirely. No improper motivation of the commissioners has been proven on the record. Therefore, as in *Weber v. City of Philadelphia*, 437 Pa. at 189, 262 A.2d at 302:

"Under the facts on this record, we are convinced that judicial intervention in this phase of the [county's] activities would not only be unjustified but unwise and improper."

## F. *Estoppel*

O'Hara Sanitation in this case additionally alleges that the county is estopped from prohibiting them access to the county landfill by virtue of various actions and inactions of the county with respect to the landfill on which plaintiff claims to have relied to its detriment.

It is clear that a municipal unit, including a county, may be subject to the doctrine of estoppel. *DeFrank v. Greene County*, 50 Pa. Commw. 30, 412 A.2d 663 (1980). The party seeking to estop the county from a particular course of conduct must show that it has relied to its detriment on conduct, words, silence,

action or inaction of the county regarding that particular conduct. Cf. *Novelty Knitting Mills Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502 (1983); *English v. Lehigh County Authority,* 286 Pa. Super. 313, 428 A.2d 1343 (1981).

O'Hara Sanitation for its part presented no testimony whatsoever, barring any conclusion as to what action of the county it may have placed reliance, or as to how any such reliance might have been to its detriment. Accordingly, this court concluded that the county was not estopped by its prior conduct or action from barring this plaintiff from access to the landfill.

## LEGAL CONCLUSIONS

Montgomery County is subject to no affirmative duty to provide access to the county landfill to those haulers with whom it has no contractual obligations. In light of this conclusion, the action in mandamus of Plymouth Township was properly dismissed.

The record does not reflect any abuse of discretion, fraud, collusion or bad faith on the part of the Montgomery County commissioners in respect to their decision to close the landfill to certain haulers; this court is therefore without the power to rule on the wisdom of such a decision and will not interfere with a discretionary decision of these governmental officials.

O'Hara Sanitation has not shown a detrimental reliance on a course of conduct by the county which would estop the county from prohibiting O'Hara Sanitation from use of the landfill.

Accordingly, the request of O'Hara Sanitation Company Inc. for a permanent injunction was properly denied by decree of February 4, 1985.

## ADDITIONAL LEGAL ISSUES

The court's determination that the county is under no legal obligation to keep open the landfill to all haulers regardless of contractual relationships, and that there has been no evidence of any arbitrary and capricious abuse of discretion on the part of the commissioners in their decision concerning the landfill eliminates the need to discuss many of the other issues raised post-trial by the parties, since these issues have no bearing on the critical legal decisions in this case and therefore become irrelevant.

However, this opinion will address briefly three of the evidentiary rulings made at trial conceivably relevant to a review of the findings of fact in order to make plain the legal basis for these rulings.

Firstly, it was this court's considered conclusion that testimony presented in the case be confined to that pertaining in time to the commissioners' decision to limit access to the landfill in the summer of 1984. Thus, testimony regarding an earlier decision to close the landfill in 1981 and testimony regardng statements made well after the 1984 decision were deemed irrelevant and objections to questions seeking such irrelevant testimony were sustained. The issue at hand was whether the commissioners abused their discretion in an arbitrary and capricious manner in 1984; issues prior to that decision (which had been dealt with in earlier litigation) and post-dating that decision were deemed too remote in time to be of significance to the 1984 decision. It is clear that the relevancy of matters distant in time from the matter at hand is a question left to the discretion of the trial judge. Cf. *Evans v. Goldfine Truck Rental Service Co.* Pa. Super. 329, 361 A.2d 643 (1976), and it was this court's conclusion that these matters preceding and subsequent

to the matter at hand were irrelevant. Cf. *Servomation Mathias Inc. v. Lancashire Hall Inc.,* 442 Pa. 602, 276 A.2d 547 (1971).

, This court also considered carefully the admissibility of a diary kept by Mr. Charles Park, the former Montgomery County Director of Solid Waste Facilities. The court held an *in camera* inspection of the diary in order to ascertain its admissibility. This inspection made clear that the document was personal in nature and had not been maintained in the regular course of business. Additionally, it was this court's conclusion that certain passages of the diary were privileged attorney-client communications between Mr. Park and the county solicitor regarding legal issues and advices. Accordingly, an objection to the production of the diary was sustained. Cf. 42 Pa.C.S. §5928; *Estate of Martin Kofsky,* 487 Pa. 473, 409 A.2d 1358 (1979). No objection was raised by plaintiffs as to the propriety of the attorney-client privilege in the context of an attorney for a governmental body namely, Montgomery County; thus this issue was not taken into consideration in the ruling by the court.

Lastly, this court confined the testimony of Curtis Campman to those matters which he could clearly recall or to general impressions and conclusions which he had made over time. It was the court's view that some of the lack of clarity exhibited by Mr. Campman as to events four years earlier would only add confusion and speculation. Questions directed to Mr. Campman were therefore limited to those which would not require pure speculation on his part and which he could answer from his independent memory. Thus, added confusion and perhaps inaccuracies were avoided.

In short, all of this court's evidentiary rulings were made with an eye to the legal issues at hand:

First, did the county have any affirmative duty to keep the landfill open to all haulers? Second, answering the first question negatively, did the county commissioners arbitrarily and capriciously abuse their discretion in making their decision? All evidence intended to shed light on these issues was deemed admissible and was considered by the court. Other evidence which was speculative or irrelevant or unrelated to these issues was not considered. It is clear that questions concerning the admission or exclusion of evidence are within the sound discretion of the trial judge and will not be reversed on appeal absent a clear abuse of discretion. *Kosey v. City of Washington Police Pension Board,* 73 Pa. Commw. 564, 459, A.2d 432 (1983); *Lewis v. Pruitt,* 337 Pa. Super. 419, 487 A.2d 16 (1985) In toto, this court's evidentiary rulings considered in light of the legal conclusions in this case were properly made within the trial court's sound discretion. Additionally, in light of this court's legal conclusions as stated above, plaintiffs here would be hard pressed to show how any of this court's evidentiary rulings would have an impact on the ultimate conclusion reached. *Anderson v. Hughes,* 417 Pa. 87, 208 A.2d 789 (1965); *Cf. Robinson v. City of Philadelphia,* 329 Pa. Super 139, 478 A.2d 1 (1984).

## CONCLUSION

In light of the foregoing discussion, it is clear that the Montgomery County is under no affirmative duty to keep the county landfill open to all haulers. Thus, any decisions of the commissioners relating to the operation of the landfill are reviewable only for an arbitrary and capricious abuse of discretion. The evidence in this case indicated no such abuse of discretion by the county commissioners.

Accordingly, this court's orders of February 4, 1985, as finalized by post-trial rulings of December 15, 1985, are proper and should be affirmed on appeal.